UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER GIBSON,

Plaintiff,

v.

CITY OF WARREN, et al.,

Defendants.
_______________________________/

Case No. 2:25-cv-12518

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING**
**MOTION FOR JUDGMENT ON THE PLEADINGS [26]**

Plaintiff Christopher Gibson sued the City of Warren, several Warren police officers, and several Macomb County officers under 42 U.S.C. § 1983 for various violations of the Fourteenth Amendment, the Rehabilitation Act, and the Americans with Disabilities Act and sought declaratory, injunctive, and monetary relief. ECF No. 9. The Defendant officers were each sued in their individual and official capacities. *Id.* at PageID.81–82. All Defendants answered the complaint, ECF Nos. 14, 15, and the parties proceeded to discovery, ECF No. 20. Defendants Matthew McPhillips, Andrew Ackerman, Bartosz Nowak, Scott Campau, Anel Veladzic, Melanie Kolomjec, and Bradley Munger (the "Macomb County Officers") then moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and argued that they are entitled to qualified immunity. ECF No. 26. Gibson responded and opposed the motion. ECF No. 28. The Macomb County Officers replied. ECF No. 29. For the following reasons, the Court will grant the motion for judgment on the

pleadings and dismiss the Macomb County Officers. The Court will also deny the Macomb County Officers' motion to stay discovery, ECF No. 30, and Gibson's motion to compel discovery, ECF No. 33, as moot.[1]

## BACKGROUND

On December 12, 2022, Plaintiff Christopher Gibson, who had been diagnosed with schizophrenia, began experiencing symptoms related to his mental disability that included "incoherence, manic behavior . . . , repetitive rambling, talking to himself, and sitting in a catatonic state."[2] ECF No. 9, PageID.82. Gibson's agitated state caused him to leave his mother's house. *Id.* After a ten-minute search of the neighborhood, the police and Gibson's mother were unable to find Gibson. *Id.* at PageID.83. Sometime later, Gibson was found at a gas station after personnel there, concerned about Gibson, called the Warren Police Department. *Id.* Gibson was subsequently apprehended by Warren police officers due to an outstanding warrant for two counts of identity theft. *Id.* The Warren police officers brought Gibson to the Warren Police Department's holding cells, where he did not cooperate. *See id.* at PageID.84–85. Gibson alleged that his "mental health emergency" made him reluctant to cooperate. *Id.* at PageID.85.

While in the custody of the Warren Police Department, Gibson was involved in several physical interactions with Warren police officers. *See id.* at PageID.84–87. In

[1] Based on the parties' briefing, the issues are clear. Accordingly, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2); Practice Guidelines for Judge Stephen J. Murphy, III.
[2] The facts set forth in this section are Gibson's version of the events taken from the complaint, ECF No. 9.

one encounter, Gibson bit a police officer. *Id.* at PageID.85. The officers responded by pepper spraying Gibson. *Id.* From that point onward, the Warren police officers "treated [Gibson] as a threat to officers' safety rather than as an individual in need of psychiatric intervention." *Id.* In a "Request for Warrant Authorization," an officer wrote that Gibson "began acting erratic" in his cell, and "it was determined he needed to be moved to the segregation cell." *Id.* Other encounters involved Warren police officers using a taser on Gibson multiple times, "[striking] him repeatedly," putting Gibson in an arm lock while another officer placed their full body on Gibson, and continuing to use pepper spray. *Id.* at PageID.86–87. The complaint alleged that the Warren police officers' actions "caused [Gibson] to become unjustifiably treated as a danger to police officers" and "set the stage for [the Macomb County Officers] to use excessive force on [Gibson] as well once he was in their custody." *Id.* at PageID.78.

Gibson was then transferred to the Macomb County Jail. *Id.* at PageID.88. The Macomb County Officers were briefed before "formulating a plan for moving [Gibson] from the Warren police vehicle into the jail." *Id.* The plan unfolded with one Macomb County officer speaking to Gibson from the rear driver's side door while the other Macomb County officers prepared to pull Gibson out from the vehicle from the rear passenger's side door. *Id.* The complaint alleged that Gibson was "in handcuffs and seated quietly" and that he responded to the first Macomb County officer "politely and quietly." *Id.* But the first officer did not advise the other officers that he was calm. *Id.* Nonetheless, the other Macomb County officers "snatched open the vehicle's door,

violently seized [Gibson] and gratuitously and without cause or reason threw him to the asphalt with full force." *Id.*

Count VI of the complaint alleged that the Macomb County Officers used excessive force against Gibson in violation of his Fourteenth Amendment rights. *Id.* at PageID.110–112. The alleged violation rested solely on the manner in which the Macomb County Officers removed Gibson from the vehicle. *See id.* at PageID.88. Gibson claimed that "there was no need for [the Macomb County Officers] to employ physical force of any kind" because they "were able to determine for themselves that [Gibson] was in handcuffs, passive, posed no immediate threat of injury to anyone and would likely comply with requests that he exit the Warren police vehicle peacefully." *Id.* at PageID.111. Gibson further claimed that "[t]o the extent there were any concerns that [Gibson] would be non-compliant, [the Macomb County Officers] should have sought and received the assistance of a professional with the credentials and experience required to obtain the cooperation of a person experiencing a mental health emergency." *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Generally, the standard of review on a motion for judgment on the pleadings is the same standard that governs a Rule 12(b) motion to dismiss. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020). Thus, the Court must grant a Rule 12(c) motion if the complaint fails to allege facts that exceed a

speculative level of plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2008)). "To survive a [Rule 12(c) motion], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The Court must view the complaint in the light most favorable to the plaintiff, presume all well-pleaded factual assertions are true, and draw reasonable inferences in the nonmoving party's favor. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (2008). But the Court need not credit a plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 678. Further, the Court can only "consider the [c]omplaint and any exhibits attached thereto . . . [and] items appearing in the record of the case and exhibits attached to defendant's [Rule 12(c) motion] so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430 (citation omitted).

## DISCUSSION

The Macomb County Officers moved for judgment on the pleadings and alleged they are entitled to qualified immunity. ECF No. 26, PageID.290, 298. They also alleged that Gibson failed to state a claim against them. *Id.* at PageID.300. The Court will first address whether it may consider the police video evidence in deciding the Macomb County Officers' motion. Next, it will address the argument that Defendant Ackerman faces separate liability from the other Macomb County officers. Third, it will conduct the qualified immunity analysis. And last, it will review whether Gibson stated a claim for declaratory and injunctive relief.

I. Police Video Evidence

A threshold matter is whether the Court should consider the video evidence that the Macomb County Officers attached to their brief in support of the present motion. In general, a court's review on a Rule 12(c) motion "must focus only on the allegations in the pleadings." *Bates*, 958 F.3d at 483. In certain qualified immunity cases, however, the Sixth Circuit has allowed review of police officer video evidence if the "uncontroverted video evidence easily resolves a case." *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022). The exception allows courts to "honor qualified immunity's principles" by granting qualified immunity, if the officers are entitled to it, "at the earliest possible stage." *Id.* Further, where a "complaint implicitly relies on the videos by recounting facts that could only be known . . . by watching the videos . . . it makes little sense to waste time and effort by ignoring the videos' contents." *Id.* But courts "can only rely on the videos over the complaint to the degree the videos are clear and 'blatantly contradict[]' or 'utterly discredit[]' the plaintiff's version of events." *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Otherwise, [courts] must accept the plaintiff's version as true." *Id.*

The Macomb County Officers attached three videos to their motion. *See* ECF Nos. 26-2, 26-4, 26-6. The first video followed the Macomb County Officers through the events in question. Consistent with the complaint, the video depicted one Macomb County officer speaking to Gibson from one side of the vehicle, while several other Macomb County Officers forcefully pulled Gibson from the vehicle onto the ground. ECF No. 26-2, 1:01–1:13. The video, however, also depicted several facts missing from

the complaint that are relevant here. First, it captured a Warren police officer warning the Macomb County Officers that Gibson is "a biter" and that "he bit two [Warren police officers] already." *Id.* at 0:26–0:40. Second, it depicted the manner in which Gibson was brought to the ground. *Id.* at 1:11–1:14. Gibson was grabbed in the shoulder/neck area and pulled from the vehicle. As he was pulled out, his right foot touched the ground first, and then his left knee contacted the floor, before the rest of his body fell flat on the ground. *Id.* The second video is the bodycam footage of Macomb County Sergeant Medley and depicted the same timeline of events as the first video, but from a different perspective. *See generally* ECF No. 26-4.

The Court will consider the first two videos in deciding the present motion. The videos provide helpful context including the warnings that the Macomb County Officers received from the Warren police. And because the videos show the manner in which the alleged force was applied, the Court need not accept as true that Gibson was "without cause or reason thr[own] . . . to the asphalt with full force." ECF No. 9, PageID.78. Because the videos help the Court "easily resolve[] [the] case," it is appropriate for the Court to consider them. *See Bell*, 37 F.4th at 364.

The third video depicted the events that transpired after Gibson was placed in a restraining chair and put in a holding cell. It depicted a nurse injecting Gibson with medicine as well as Gibson's efforts to headbutt and spit at the officers. ECF No. 26-6, 0:34–3:19. A second spit hood is then placed on Gibson's head. *Id.* at 3:33–3:37. Gibson is next transferred to McLaren Hospital and placed on a gurney. *Id.* at 13:00–16:49. Because the events in the third video all take place after the challenged

conduct, they are irrelevant to the qualified immunity analysis. *See Hernandez v. Mesa*, 582 U.S. 548, 554 (2017) ("The qualified immunity analysis . . . is limited to the facts that were knowable to the defendant officers at the time they engaged in the conduct in question." (citation modified)).

Accordingly, the Court will consider the first two videos, ECF Nos. 26-2, 26-4, but not the third, ECF No. 26-6.

II. Liability Against All Macomb County Officers

The Macomb County Officers argued that "[t]o the extent an actionable excessive force claim exists," it can only lie against Defendant Ackerman because Ackerman "was the one who opened the door and pulled Gibson from the vehicle." ECF No. 26, PageID.291. In their view, the other Macomb County Officers, "can only be liable for failure to intervene." *Id.*

"As a general rule, mere presence at the scene of a [constitutional violation], without a showing of direct responsibility for the action, will not subject an officer to liability." *Ghandi v. Police Dep't of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984) (citation omitted). But "[h]aving personal involvement in or direct responsibility for the violation of Plaintiff's constitutional rights does not, however, necessarily mean that each Defendant officer directly placed hands on [the plaintiff]." *Fazica v. Jordan*, 926 F.3d 283, 289 (6th Cir. 2019). "[A] police officer who fails to act to prevent the use of excessive force may still be held liable where (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the

opportunity and the means to prevent the harm from occurring." *Id.* (quotations omitted).

Here, the complaint alleged that the Macomb County Officers "formulated a plan" to transfer Gibson out of the vehicle. ECF No. 9, PageID.88. Viewing the facts in the light most favorable to Gibson, the Court finds that all Macomb County Officers were active participants in the plan to transfer Gibson. As active participants, they had both reason to know that alleged force would be used as well as the opportunity to prevent it. The excessive force claim therefore may lie against each of those Defendants. Accordingly, the Court will proceed with the qualified immunity analysis without bifurcating Defendant Ackerman from the other Macomb County officers.

III. Qualified Immunity

Qualified immunity is an affirmative defense to § 1983 claims. *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). It "shields public officials from money-damages liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016) (citation modified) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Once a defendant asserts qualified immunity, the plaintiff then bears "the burden of showing that defendants are not entitled to qualified immunity." *Mahen v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (citation omitted). To overcome qualified immunity, a plaintiff must plead facts to show that (1) defendants violated a constitutional right, and (2) "the right was clearly established at the time of the

challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quotation omitted). If defendants prevail on either prong, they must be granted qualified immunity. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Thus, courts have the "sound discretion in deciding which of the two prongs . . . should be addressed first." *Pearson*, 555 U.S. at 236.

In general, it is disfavored to grant a Rule 12 motion on the basis of qualified immunity because "development of the factual record is 'frequently necessary to decide whether the official's actions violated clearly established law.'" *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023) (quoting *Anders v. Cuevas*, 984 F.3d 1166, 1175 (6th Cir. 2021)). But the Sixth Circuit has also explained that "an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest point." *Anders*, 984 F.3d at 1175 (citation modified). And the Sixth Circuit has granted qualified immunity on a Rule 12 motion when it had video evidence to support its finding. *See Brown v. Giles*, 95 F.4th 436, 440–41 (6th Cir. 2024).

The Court will begin with the second prong of the qualified immunity analysis that requires a plaintiff to show that the alleged constitutional right that was violated, was "clearly established at the time of the challenged conduct." *Ashcroft*, 563 U.S. at 735 (quotation omitted). "In identifying clearly established rights, a [plaintiff] must demonstrate that the contours of the right were sufficiently clear that reasonable officers would understand that their actions violated it." *Dannah v. City of Grand Rapids*, 176 F.4th 923, 926–27 (6th Cir. 2026) (citation modified). Thus, the

Supreme Court has "repeatedly told courts" not to define rights at "a high level of generality." *Ashcroft*, 563 U.S. at 742.

Specificity is especially important in excessive force cases "because 'excessive force is an area of the law in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Green v. Perkins*, No. 25-5690, 2026 U.S. App. LEXIS 4248, at *9 (6th Cir. Feb. 10, 2026) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104–05 (2018)); *see also Dannah*, 176 F.4th at 927 ("[S]pecific cases are especially important when it comes to discerning the context rich boundaries of excessive force." (quotation omitted)).

Gibson cited several cases in support of his assertion that "officers may not use force against restrained and subdued subjects." ECF No. 28, PageID.363. But his reliance on those cases attempted to define his rights at too high a level of generality, and the facts of those cases are not sufficiently analogous to "squarely govern[]" the present case.

In several of the cases that Gibson cited, the egregious use of force was completely distinguishable. In *Champion v. Outlook Nashville, Inc.*, for example, the officer pepper sprayed and applied "asphyxiating" pressure to a non-resisting and handcuffed plaintiff. 300 F.3d 893, 897–98 (6th Cir. 2004). Similar pressure was applied in *Martin v. City of Broadview Heights*, 712 F.3d 951, 955–56 (6th Cir. 2013). And in *Phelps v. Coy*, after the officer tackled the plaintiff, the officer continued to beat the plaintiff by "grabb[ing] [plaintiff's] shirt and bang[ing] his head into the floor

at least three times." 286 F.3d 295, 297 (6th Cir. 2002). None of those facts bear any resemblance to the Macomb County Officers' forceful removal of Gibson out of the vehicle, as depicted in the police video evidence. *See* ECF No. 26-2, 1:10–1:13; ECF No. 26-4, 0:59–1:02. And there were no allegations that the Macomb County Officers used pepper spray, applied asphyxiating pressure, or continued to beat Gibson after they were on top of him.

In the other cases Gibson cited, the context surrounding the use of force was sufficiently different that the Macomb County Officers would not have been on notice that their conduct was unconstitutional. In *Barton v. Martin*, for instance, the officer shoved a non-threatening, non-resisting, and handcuffed plaintiff down the front porch of his house, which was elevated three feet from the sidewalk. 949 F.3d 938, 954–55 (6th Cir. 2020). And in *Coley v. Lucas County*, the officer "shoved and struck" a handcuffed and shackled plaintiff from behind, that caused the plaintiff to "fall straight to the [cement] floor" and "strik[e] his head on the wall." 799 F.3d 530, 534 (6th Cir. 2015). Last, in *Harris v. City of Circleville*, the officers "yanked" at the plaintiff's necklace and kicked the plaintiff multiple times in the legs and once in the ribs when the plaintiff was physically unable to comply with an order. 583 F.3d 356, 366 (6th Cir. 2009). In none of those cases were the officers warned of the plaintiff's violent tendencies. *See* ECF No. 26-2, 0:26–0:40; ECF No. 26-4, 0:16–0:25. And none of the cases involved situations that required the officers to transfer a potentially non-compliant plaintiff from a vehicle into a restraining chair. *See* ECF No. 26-2, 2:06–4:42; ECF No. 26-4, 1:55–4:30.

Gibson argued that these cases clearly established that "the gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional." ECF No. 28, PageID.364 (quoting *Harris*, 583 F.3d at 367). And in Gibson's view, they govern the present case because Gibson was handcuffed and acting "calmly and politely." *Id.* at PageID.364–365. Although the complaint characterized the Macomb County Officers' use of force as "gratuitous," ECF No. 9, PageID.88, the complaint also alleged that the Warren police officers "treated [Gibson] as a danger," which "set the stage" for the Macomb County Officers' use of force. *Id.* at PageID.78. The fact that Gibson was viewed as a danger, whether justified or not, distinguishes the Macomb County Officers' alleged "gratuitous" use of force from the cases Gibson cited.

Last, the complaint alleged that despite the warnings from the Warren police, "there was no need for [the Macomb County Officers] to employ physical force of any kind" because they were able to "determine for themselves that [Gibson] was in handcuffs, passive, posed no immediate threat of injury to anyone and would likely comply with requests that he exit the Warren police vehicle peacefully." *Id.* at PageID.111. But none of the cases Gibson cited clearly established that an officer must ignore prior warnings of a plaintiff's violent tendencies in favor of their own initial observations.

At bottom, none of the cases that Gibson cited involved "facts similar enough" to "squarely govern[]" the instant case. *Dannah*, 176 F.4th at 926 (quotation omitted). Gibson has therefore failed to establish that the Macomb County Officers' alleged

conduct violated a "clearly established" right. *Ashcroft*, 563 U.S. at 735. The Court will thus grant qualified immunity to the Macomb County Officers without need to address the first prong of the qualified immunity test. *See Pearson*, 555 U.S. at 236. Accordingly, Gibson's claim for excessive force against the Macomb County Officers may not survive to the extent it sought money damages.

IV. Failure to State a Claim

The Macomb County Officers argued that they should be dismissed from the case because they are entitled to qualified immunity. Qualified immunity, however, is only a defense against claims for monetary relief. In addition to monetary relief, Gibson sought declaratory and injunctive relief for all counts. ECF No. 9, PageID.112. Thus, despite finding that the Macomb County Officers are entitled to qualified immunity, the Court will next review whether Gibson stated a Fourteenth Amendment excessive force claim for declaratory and injunctive relief. *See Smith v. Leis*, 407 F. App'x 918, 930 (6th Cir. 2011) ("[A] court could award both declaratory and injunctive relief in an action against a defendant protected by qualified immunity."); *Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir. 1996) ("[I]mmunity only precludes claims for monetary damages against officials in their individual capacities, and not claims for injunctive or declaratory relief.").

A municipality may only be liable for a § 1983 claim if the plaintiff can show that the municipality's policy or custom caused the alleged injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The same applies for § 1983 suits against municipal officers who are sued in their official capacities. *Id.* at 690 n.55 (explaining

that official-capacity suits are equivalent to suing the government entity in which the officer is an agent). *Monell*'s policy or custom requirement applies whether the suit is for money damages, or declaratory or injunctive relief. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 31 (2010).

Here, *Monell* governs the analysis because Gibson sued the Macomb County Officers in their official capacities. Under *Monell*, however, Gibson failed to state a claim because the complaint is devoid of any allegations that Gibson's injuries were caused by a policy or custom of Macomb County. Accordingly, Gibson's claim for excessive force against the Macomb County Officers may not survive to the extent it sought declaratory or injunctive relief either. The Court will thus dismiss Count VI as well as the Macomb County Officers from the case.

V. Motion to Stay and Motion to Compel

Because the Court will dismiss the Macomb County Officers from the case, the Court will deny as moot the Macomb County Officers' motion to stay the case, ECF No. 30, and Gibson's motion to compel discovery from the Macomb County Officers, ECF No. 33.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that the Macomb County Officers' motion for judgment on the pleadings [26] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Matthew McPhillips, Andrew Ackerman, Bartosz Nowak, Scott Campau, Anel Veladzic, Melanie Kolomjec, and Bradley Munger are **DISMISSED**.

**IT IS FURTHER ORDERED** that Count VI of the complaint is **DISMISSED WITH PREJUDICE**, to the extent it sought monetary relief, and **DISMISSED WITHOUT PREJUDICE**, to the extent it sought declaratory or injunctive relief.

**IT IS FURTHER ORDERED** that the Macomb County Officers' motion to stay [30] and Gibson's motion to compel discovery [33] are **DENIED AS MOOT**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: November 20, 2026